**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 15, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: U.S. MEDICAL, INC.,

    Debtor,

---------------------------

GLEN R. ANSTINE,

    Plaintiff - Appellant,

v.

CARL ZEISS MEDITEC AG,
formerly known as Ascelepion-
Meditec
AG

    Defendant - Appellee.

No. 07-1259

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY**
**APPELLATE PANEL**
**(BAP No. CO-06-081)**

---

Philip A. Pearlman, Pearlman & Dalton, P.C., Denver, Colorado, for Plaintiff -
Appellant.

Mark Bell, Hatch Jacobs LLC, Denver, Colorado, for Defendant - Appellee.

---

Before **KELLY** and **TYMKOVICH**, Circuit Judges, and **FRIZZELL**,[*] District Judge.

**KELLY**, Circuit Judge.

Plaintiff-Appellant and Trustee Glen R. Anstine appeals from the judgment of the bankruptcy appellate panel ("BAP"). The BAP determined that Defendant-Appellee Carl Zeiss Meditec AG ("Creditor") was not a "non-statutory insider" of Debtor U.S. Medical, Inc. ("Debtor") for the purposes of 11 U.S.C. § 547(b)(4)(B). The BAP reversed the judgment of the bankruptcy court. The bankruptcy court held that Creditor <u>was</u> a non-statutory insider of Debtor under 11 U.S.C. § 101(31) and permitted Trustee to avoid $147,307 in transfers made between ninety days and one year before Debtor filed for Chapter 7 bankruptcy. <u>See</u> 11 U.S.C. § 547(b)(4)(B). Our jurisdiction arises under 28 U.S.C. § 158(d) and we affirm the judgment of the BAP.

<u>Background</u>

The facts upon which the bankruptcy court based its decision are not disputed. Debtor distributed new and used medical equipment through the Internet. Debtor entered into a distribution agreement with Creditor, a German

---

[*]  The Honorable Gregory K. Frizzell, District Judge for the United States District Court for the Northern District of Oklahoma, sitting by designation.

producer of surgical equipment and aesthetic lasers, on June 13, 2000. Under that agreement, Debtor served as Creditor's exclusive distributor in North America and Creditor became Debtor's sole laser manufacturer. The agreement also provided that Creditor had the right to appoint a member of Debtor's board of directors. Under a separate stock-purchase agreement, Creditor acquired a 10.6% equity interest in the company for $2 million in cash and a $2 million inventory-purchase credit. In addition, Creditor retained an unexercised warrant for 80,000 additional shares of Debtor. The distribution and stock-purchase agreements formed the basis of a "strategic alliance" between the companies.

Dr. Bernard Seitz, the CEO of Creditor, was appointed to Debtor's board in accordance with the stock-purchase agreement. The stock-purchase agreement provided for the payment of a financial penalty by Debtor to Creditor if Dr. Seitz were removed from the board. Dr. Seitz received only a stock-option package in Debtor—which he never exercised—as compensation for his service. Dr. Seitz attended every board meeting, either in person or by phone. He had access to all of Debtor's financial information but did not participate in any vote concerning payment to Creditor. All day-to-day business between Debtor and Creditor was handled by Creditor's Chief Financial Officer Michael Dettlebacher.

After experiencing financial difficulties, Debtor voluntarily filed for Chapter 7 bankruptcy on June 24, 2002. In an adversary proceeding, Trustee sought to avoid certain transfers made between ninety days and one year before

the bankruptcy-petition date, claiming that Creditor was an "insider" under 11 U.S.C. § 547(b)(4)(B). Within this period, Creditor received sporadic payments and some inventory returns. Creditor lost its entire investment in Debtor and was owed approximately $1 million when the bankruptcy petition was filed. After a trial on March 7, 2006, the bankruptcy court held that Creditor was a "non-statutory insider" pursuant to 11 U.S.C. § 101(31) because of the "extreme closeness" between Debtor and Creditor. App. at 241, 248.

The bankruptcy court reached this conclusion even though it also specifically found no evidence that Dr. Seitz, as Creditor's representative, controlled, sought to control, or exercised any undue influence on Debtor; rather, Dr. Seitz was sensitive to "potential conflicts of interest" and both Dr. Seitz and Debtor's senior management "attended to the kinds of formalities one would expect to see in dealings between third parties at arm's length." Id. at 246-47. Likewise, the bankruptcy court found no evidence that Creditor's 10% share of Debtor allowed Creditor to control or attempt to exercise any undue influence on Debtor. Id. at 247.

The bankruptcy court denied leave for an interlocutory appeal to the district court, the parties stipulated to a judgment of $147,307 in Trustee's favor if Creditor were ultimately ruled to be a non-statutory insider, and Creditor preserved its right to appeal. The bankruptcy court entered its final judgment on August 7, 2006 after directing Trustee to file a motion pursuant to Fed. R. Bankr.

P. 9019. Creditor then appealed to the BAP.

On appeal, the BAP reversed, ruling that "not every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship," id. at 273 (quoting In re Friedman, 126 B.R. 63, 70 (9th Cir. B.A.P. 1991)), and that "closeness alone does not give rise to insider status," id. at 274. The BAP entered its judgment on June 12, 2007. This appeal followed.

Discussion

We independently review the decision of the bankruptcy court and not the decision of the BAP. In re Kunz, 489 F.3d 1072, 1077 (10th Cir. 2007). We agree with the BAP that whether Creditor is a non-statutory insider would normally be a question of fact reviewed under the clearly erroneous standard. In re Enterprise Acquisition Partners, Inc., 319 B.R. 626, 630 (9th Cir. B.A.P. 2004). Here, however, the facts are undisputed and the issue revolves around the legal conclusion drawn from the facts against the backdrop of a statute; thus, we have a mixed question of law and fact where the legal analysis predominates. See In re Brown, 108 F.3d 1290, 1292 (10th Cir. 1997). Our review is therefore de novo. Id.

In general, bankruptcy law prohibits "preferential transfers." See Kunz, 489 F.3d at 1074-75. As we noted in Kunz:

One of the purposes of bankruptcy law is to provide fair remedies to creditors generally, and a corollary of this principle is to prevent, within limits, a debtor from giving preferred treatment to some creditors in derogation of the interests of other, similarly situated creditors. A debtor might be motivated to prefer one creditor or some creditors over his creditors generally for a number of reasons, including personal and business connections. The supervision of the bankruptcy court generally prevents unwarranted preferential treatment. But the law has long recognized and addressed the concern that a debtor could circumvent this policy by making preferential transfers before filing his bankruptcy petition.

Id.

Under 11 U.S.C. § 547(b), therefore, a bankruptcy trustee may avoid, or

force a creditor to repay to the debtor's estate, a transfer of an interest of the

debtor in property if certain conditions are met.[1]  See id. at 1075-76; In re A.

---

[1]  An avoidable preferential transfer includes "any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>> (A) the case were a case under chapter 7 of [the Bankruptcy Code];
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of [the Bankruptcy Code]."

Tarricone, Inc., 286 B.R. 256, 260 (Bankr. S.D.N.Y. 2002). The contested condition in this appeal is that a "trustee may avoid any transfer of an interest of the debtor in property made between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider."[2] 11 U.S.C. § 547(b)(4)(B). An "insider" in this context "includes[,] if the debtor is a corporation[:] director of the debtor[3]; officer of the debtor; person in control of the debtor; partnership in which the debtor is a general partner; general partner of the debtor; or relative of a general partner, director, officer, or person in control of the debtor." Id. § 101(31) (numbering omitted) (footnote added).

---

11 U.S.C. § 547(b).

[2] Any transfer on or within ninety days of the date of the debtor's filing of a bankruptcy petition is already generally avoidable. See 11 U.S.C. § 547(b)(4)(A). However,

> [i]n the case of creditors who are insiders of the debtor, the preference period is extended from 90 days to one year prior to filing. Simply stated, the reason for the extended preference period is that insiders are far more likely to be given preferential treatment in debt repayment than creditors who deal with the debtor at arm's length. In addition, insiders have the power to influence or even control the date of filing for bankruptcy in relation to the dates of repayment to themselves.

A. Tarricone, 286 B.R. at 260.

[3] Dr. Seitz was a director on Debtor's board, but the question here is whether Creditor, as a corporation, was an insider, not Dr. Seitz.

The word "includes" is not limiting.  Id. § 102(3).  Therefore,

> [c]ourts have held that the use of the word "includes" in this section indicates that Congress did not intend for the categories listed to be exclusive.  Instead, the categories are "illustrative rather than exhaustive."  Consequently, the authorities are in agreement that there are "two distinct types of insiders, [first] those entities specifically mentioned in the statute ('relative,' 'partnership,' 'general partner,' and 'corporation'), i.e. per se insiders, or [second] those not listed in the statutory definition, but who have a 'sufficiently close relationship with the debtor that . . . conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.'"  Each of the two categories of insiders "is based on either one of two relational classifications.  First, the Code assigns insider status to entities or relatives of the debtor, or of persons in control of a related entity, whose affinity or consanguinity gives rise to a conclusive presumption that the individual or entity commands preferential treatment by the debtor.  Second, insider status may be based on a professional or business relationship with the debtor, in addition to the Code's per se classifications, where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of dealings between the parties."

Kunz, 489 F.3d at 1078-79 (first brackets added) (emphasis and other brackets original) (citations and paragraph breaks omitted).  An "insider" who does not fall within the plain language of 11 U.S.C. § 101(31) but rather falls within the second category is a "non-statutory insider"—the type of insider the bankruptcy court held Creditor to be.  App. at 248-49.

Trustee primarily argues that the bankruptcy court was correct (and the BAP was wrong) because the closeness of a relationship between a creditor and a

- 8 -

debtor alone is enough to support a finding that a creditor is a non-statutory insider of a debtor pursuant to 11 U.S.C. § 101(31). Aplt. Br. at 12-13. A showing that the creditor exerted control or undue influence over the debtor or that the creditor engaged in less-than-arm's-length transactions with the debtor is not required. Id. Creditor responds that the bankruptcy court's decision was incorrect because a trustee's demonstration of a creditor's control, undue influence, or transactions at less than arm's length is essential for a finding that a creditor is a non-statutory insider of a debtor. Aplee. Br. at 12-13. A close relationship alone, Creditor contends, is not enough to confer insider status. Id.

Both parties agree that there is little case law on this issue. Id. at 12; Aplt. Br. at 12. The legislative history for the definition of "insider" states that "[a]n insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms [sic] length with the debtor." S. Rep. No. 95-989, at 25 (1978); H.R. Rep. No. 95-595, at 312 (1977); see Aplee. Br. at 14, 25. "In ascertaining insider status, then, courts have looked to the closeness of the relationship between the parties and to whether any transactions between them were conducted at arm's length."[4] In re Krehl, 86 F.3d 737, 742 (7th Cir. 1996). A leading treatise supports this view. 5 Allen N.

_____

[4] An arm's-length transaction is "[a] transaction in good faith in the ordinary course of business by parties with independent interests. . . . The standard under which unrelated parties, each acting in his or her own best interest, would carry out a particular transaction." Black's Law Dictionary 109 (6th ed. 1990).

Resnick & Henry J. Sommer, Collier on Bankruptcy, ¶ 547.03[6] (15th rev. ed. 2008) ("The consideration of insider status focuses on two factors: (1) the closeness of the relationship between the parties; and (2) whether the transaction was negotiated at arm's length.").  Courts have also assessed the presence or absence of control[5] of the debtor by the creditor and whether the creditor has access to inside information.  See Kunz, 489 F.3d at 1079; Krehl, 86 F.3d at 743. The inquiry then is whether there is a close relationship and whether there is anything other than closeness to suggest that any transactions were not conducted at arm's length.  See Krehl, 86 F.3d at 742.

We considered non-statutory-insider status in Kunz, and that case might plausibly be read to suggest that a close relationship alone (or at least a close relationship with some potential to gain advantage based on affinity) is enough for a court to hold that a creditor is a non-statutory insider of a debtor.  See 489 F.3d at 1079.  In Kunz, however, we quoted Enterprise, 319 B.R. at 631, an opinion that, admittedly, did not concern non-statutory insiders but nonetheless stated that "[t]he per se insider is considered to be close enough to the debtor to demand preferential treatment as a matter of law, regardless of whether the

---

[5] The "control" to which such cases refer can only correctly be interpreted as something short of actual, legal control over the debtor's business because "actual control" would subject the creditor to the statutory category of "person in control of the debtor" under 11 U.S.C. § 101(31).  Any interpretation of "control" within the non-statutory-insider context as anything like the ability "to order, organize or direct" the debtor's operations is simply incorrect.  Friedman, 126 B.R. at 71.

insider has any actual control over the actions of the debtor." The language quoted in Kunz from Enterprise, in turn, originated from Friedman, 126 B.R. at 69-70, a case that undercuts Trustee's approach:

> The case law that has developed [] indicates that not every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship. A common basis for these rulings was the perception that, while a creditor may be in a strong bargaining position in dealing with the debtor, so long as the parties transact their business at arm's length, such circumstances do not necessarily give rise to insider status even though there was some degree of personal relationship with the debtor. It is unlikely that Congress intended that complex business relationships existing over a period of time, attended by some personal involvement but without control by the creditor over the debtor's business, would subject such creditor to insider status.

Friedman, 126 B.R. at 70 (citations and paragraph break omitted). In addition, Kunz elaborated on Enterprise's language and stated that a creditor can be a non-statutory insider "on a showing that the person or entity in fact had a relationship with the debtor that was sufficiently close that the two were not dealing at arm's length." Kunz, 489 F.3d at 1079 (emphasis added). A debtor can assert that a statutory insider is an insider "without need for showing the specific nature of the relationship with the debtor in a particular case" but non-statutory insiders are to be found by courts "in particular cases, based on the specific facts." Id.

On closer review, Kunz requires that the relationship between a debtor and a non-statutory insider be not only close, but also at less than arm's length. See id. Kunz stated that Krehl "held that the former president of a company had been

- 11 -

an insider solely by virtue of office prior to his resignation.  After his resignation, he continued to be an insider—not because he was 'president emeritus' or 'former president,' as the Trustee in this case would apparently argue—but because on the evidence he remained in control of the company." Id. (emphasis added).  In addition, the Krehl court itself noted that "a court should look to all of the circumstances to determine whether the relationship between the individual and the corporate entity [is] so close that the two could not be said to be dealing at arms [sic] length."  86 F.3d at 743.  Thus, more than mere closeness is necessary for a court to hold that a creditor was a non-statutory insider of a debtor.  See Kunz, 489 F.3d at 1079.

In this case, the bankruptcy court held that Creditor was a non-statutory insider of Debtor despite the absence of any control, intention to control, or undue influence by Dr. Seitz and Dr. Seitz's "sensitiv[ity]" to "potential conflicts of interest" and attention "to the kinds of formalities one would expect to see in dealings between third parties at arm's length."  App. at 246-47.  Therefore, because the bankruptcy court held that "[t]he extreme closeness of the relationship" between the two "is determinative," without any finding that the transactions between Creditor and Debtor were not at arm's length or that there was undue influence or control by Creditor, it erred in holding that Creditor was a non-statutory insider of Debtor.  Id. at 248; see Kunz, 489 F.3d at 1079; Krehl, 86 F.3d at 742-43.  Such an approach conflicts with our precedent.  See Kunz, 489

- 12 -

F.3d at 1079.

Trustee further contends that (1) the absence of control or of an arm's-length relationship is not determinative, (2) Dr. Seitz's access to inside information supports the bankruptcy court's decision, (3) through Dr. Seitz, Creditor was a de facto director and strategic partner of Debtor, and (4) the bankruptcy court did not create a per se rule that a creditor corporation with one of its executives on a debtor's board makes that creditor a non-statutory insider, but rather the bankruptcy court ruled based upon all the facts and circumstances. We are not persuaded.

First, although Trustee is correct that an absence of actual control does not rule out non-statutory-insider status, that does not resolve the issue. The bankruptcy court necessarily had to determine that Creditor did not actually control Debtor to rule that it was a non-statutory, rather than a statutory, insider. See 11 U.S.C. § 101(31)(B)(iii), (41). Trustee seems to recognize this but misses the broader point. Aplt. Reply Br. at 5. A "person in control of the debtor" is a statutory insider of the debtor under 11 U.S.C. § 101(31). The definition of "person" includes a corporation—in this case, Creditor. 11 U.S.C. § 101(41). Trustee relies upon In re Three Flint Hill Ltd. P'ship for support, a case holding that "actual control is not a predicate to finding someone to be an extra-statutory insider." 213 B.R. 292, 299 (D. Md. 1997) (quotation and brackets omitted). "Actual control" is the ability of the creditor to "unqualifiably dictate corporate

policy and the disposition of corporate assets," id. (quotation omitted), or the "legal right or ability to exercise control over a corporate entity," Krehl, 86 F.3d at 743. Such actual control is obviously not present here. A finding of actual control by the bankruptcy court would make Creditor a statutory insider and would avoid the question of whether it was a non-statutory insider altogether. Obviously, then, a bankruptcy court does not have to find actual control of the debtor by the creditor before ruling that the creditor is a non-statutory insider of the debtor. See id.; 11 U.S.C. § 101(31), (41); Three Flint Hill, 213 B.R. at 299.

Next, Trustee contends that he is not required to prove the absence of an arm's-length transfer because a court may still conclude that a creditor is a non-statutory insider even though the creditor transacted at arm's length with the debtor. Aplt. Br. at 21. He states that "[p]roof of closeness sufficient to permit the opportunity of gain is all that is required by the statute." Id. at 22 (emphasis original). Trustee relies upon Kunz, 489 F.3d at 1079, which we have already considered above, and also relies upon In re McIver, 177 B.R. 366, 370 (Bankr. N.D. Fla. 1995), for the proposition that "[a] business, professional, or personal relationship, that compels the conclusion that the transferee could be able to gain an advantage such as that attributable simply to affinity, would result in the transferee being classified as an insider." Aplt. Br. at 21-22 (emphasis omitted).

The statutory-insider categories under 11 U.S.C. § 101(31) treat certain people or entities as insiders regardless of whether they made any transfers.

- 14 -

Trustee reminds us that several sections of the Bankruptcy Code use the term "insider" with the same applicable definition, but only two, including 11 U.S.C. § 547(b)(4)(B), concern transfers of property. Id. at 23-24. Trustee also argues that the "ordinary course of business" defense under 11 U.S.C. § 547(c)(2)(A)[6] does not permit a trustee to avoid what amounts to an arm's-length transaction with an insider, but if a transaction not at arm's length is required to show non-statutory-insider status, non-statutory insiders will never have an "ordinary course of business" defense because less-than-arm's-length transfers are always outside the ordinary course of business. Id. at 25; see Black's Law Dictionary 109 (6th ed. 1990).

We initially note that the legislative history pertaining to the definition of "insider" clearly states that "[a]n insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms [sic] length with the debtor." S. Rep. No. 95-989, at 25 (1978); H.R. Rep. No. 95-595, at 312 (1977) (emphasis added); see Aplee. Br. at 14, 25. Kunz stated that the insiders explicitly listed in 11 U.S.C. § 101(31) give rise to a "conclusive presumption" that they have such a relationship whereas non-statutory insiders must have a relationship that "compels the conclusion" that

---

[6] 11 U.S.C. § 547(c)(2)(A) states that "[t]he trustee may not avoid under this section a transfer to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was made in the ordinary course of business or financial affairs of the debtor and the transferee."

- 15 -

a creditor and a debtor are "close enough to gain an advantage attributable simply to affinity rather than to the course of dealings between the parties." 489 F.3d at 1079 (quoting Enterprise, 319 B.R. at 631) (emphasis omitted). If a trustee cannot prove that there has been some transaction between the creditor and the debtor that is not at arm's length, he cannot "compel[] the conclusion" that the creditor is a non-statutory insider. Id. (quoting Enterprise, 319 B.R. at 631). Instead, he implies that any advantage gained by the creditor was through "the course of dealings between the parties" rather than through simple "affinity"—a relationship indicating that the creditor is not an insider. Id. (quoting Enterprise, 319 B.R. at 631) (emphasis omitted). Congress has conclusively found that statutory insiders do not have interests "independent" of their debtors whereas parties held to be operating at arm's length necessarily do. Black's Law Dictionary 109 (6th ed. 1990); see S. Rep. No. 95-989, at 25 (1978); H.R. Rep. No. 95-595, at 312 (1977).

Further, with respect to Trustee's statutory-construction arguments, a non-statutory insider who has engaged in a less-than-arm's-length transaction fits just as well into the Bankruptcy Code provisions as a per se insider. We hold here that a creditor may only be a non-statutory insider of a debtor when the creditor's transaction of business with the debtor is not at arm's length; a bankruptcy court, however, may find a statutory insider without this requirement. The "ordinary course of business" defense is still available for any transactions between a non-

statutory insider and a debtor as well as for transactions between a statutory insider and a debtor that are in "the ordinary course of business"—transactions that must be at arm's length.  11 U.S.C. § 547(c)(2)(A).

Here, where the bankruptcy court considered a variety of factors and found that all relations between Creditor and Debtor were at arm's length, App. at 247, a ruling that Creditor is a non-statutory insider does not follow.  Although some individuals or entities specifically mentioned in 11 U.S.C. § 101(31) must be insiders even if they operated at arm's length because Congress dictated this "conclusive presumption," a non-statutory insider, by definition, is not operating at arm's length with the debtor.  Kunz, 489 F.3d at 1079 (quoting Enterprise, 319 B.R. at 631) (emphasis omitted); see S. Rep. No. 95-989, at 25 (1978); H.R. Rep. No. 95-595, at 312 (1977).  Therefore, for a bankruptcy court to hold that a creditor is a non-statutory insider in circumstances like these, a trustee must prove that the creditor and debtor did not operate at arm's length at the time of the challenged transaction.  See S. Rep. No. 95-989, at 25 (1978); H.R. Rep. No. 95-595, at 312 (1977); Resnick & Sommer, supra, § 547.03[6].

Trustee next argues that because Creditor had access to Debtor's inside information by virtue of Dr. Seitz's position on Debtor's board, Creditor was a non-statutory insider.[7]  Aplt. Br. at 25-26.  The first case upon which the Trustee

_____

[7] Trustee also reminds us that the BAP never mentioned in its opinion the bankruptcy court's finding that "[Creditor] had 'complete access to all information that is available only to corporate insiders.'"  Aplt. Br. at 5.  We rule

- 17 -

relies was reversed on appeal and does not support his argument.  See In re

Papercraft Corp., 187 B.R. 486, 496 (Bankr. W.D. Pa. 1995), rev'd, 211 B.R. 813

(W.D. Pa. 1997), aff'd, Citicorp Venture Capital, Ltd. v. Comm. of Creditors

Holding Unsecured Claims, 160 F.3d 982 (3d Cir. 1998).  Papercraft is

distinguishable because, in that case, although an executive from the creditor was

placed on the debtor's board in a position to access inside information, he acted

"as a director of Debtor with [the creditor's] best interests in mind."  Id. at 495.

He was also responsible as vice president of the creditor for acquiring and

monitoring the creditor's investments in the debtor.  See id.  He used the inside

information to enrich the creditor for which he worked by having the creditor

purchase claims against the debtor.  See id. at 495-96.  In this case, however, Dr.

Seitz was sensitive to "potential conflicts of interest" and operated at arm's length

with Debtor.  App. at 246-47.

Trustee also relies on the short statement by the Krehl court that "[a]ccess

to inside information can be sufficient to confer insider status even where there is

no legal right or ability to exercise control over a corporate entity."  86 F.3d at

743 (emphasis added).  The Krehl court cited Papercraft, 187 B.R. at 496, for this

proposition.  Krehl, 86 F.3d at 743.  In Krehl, the court had to determine whether

the debtor in a personal bankruptcy should have been denied a discharge under 11

here, however, that Dr. Seitz's theoretical access to inside information in this case
does not confer non-statutory-insider status on Creditor and therefore this
omission is inconsequential.

- 18 -

U.S.C. § 727(a)(7) and in the process had to decide whether the individual debtor was an insider of a corporation of which he was formerly an officer and director. Id. at 741, 743. The debtor resigned after the corporation converted its Chapter 11 bankruptcy to Chapter 7. Id. at 743. He remained the sole owner of the corporation's stock prior to the corporation's filing for Chapter 7 bankruptcy and after he resigned. Id. The Krehl court held that the information he had obtained as an officer and director of the corporation allowed him to divert receivable accounts from the corporation to a successor corporation, to enable the successor corporation to fill orders originally accepted by the initial corporation, and to attempt to divert material ordered and paid for by the initial corporation to the successor corporation. Id. The individual debtor's access to inside information was sufficient to confer insider status because he "remained the only one who knew what was going on." Id. (internal quotation and ellipsis omitted). The case before us, of course, is different because we have a finding by the bankruptcy court that Dr. Seitz never relied upon any inside information to do anything similar. See id.

Trustee next argues that Creditor was a "de facto director" of Debtor, and therefore a non-statutory insider, because Dr. Seitz was on Debtor's board.[8] Aplt.

---

[8] This argument suggests that because Dr. Seitz, the CEO of Creditor, was a director of Debtor, Creditor should be considered a "de facto" director of Debtor. An individual who was a director of a debtor would be an insider of that debtor under 11 U.S.C. § 101(31) and so, according to the Trustee, a creditor corporation with one of its executives on a debtor's board should be considered

- 19 -

Br. at 27 (emphasis original). He also argues that the fact Debtor and Creditor had an "important strategic alliance" suggests that Creditor was a non-statutory insider of Debtor. Id. at 28. Trustee also relies upon Papercraft, 187 B.R. at 494 n.6, for the proposition that Creditor was a "de facto director." Aplt. Br. at 27. As discussed above, however, the facts of Papercraft are far different than those in this case and the "de facto director" language seems particularly tailored to a situation where the director takes steps to enrich the creditor. See 187 B.R. at 494-96.

Trustee also cites one unpublished bankruptcy case to support his "strategic alliance" argument. Aplt. Br. at 28. The court in that case, in denying a motion to dismiss, admitted that such a "strategic alliance" argument was a "novel issue" and that "[e]stablishing insider status for Defendant may be a hurdle which Plaintiff cannot clear, for the duties of strategic partners toward one another would not be at the level of general partners." In re Winstar Commc'n, Inc., No. 01-01430, 2003 WL 21356090, *9 (Bankr. D. Del. May 29, 2003) (unpublished). Regardless, the facts of that case, where the creditor was responsible for $2 billion in financing and building a global telecommunications network on a turnkey basis, suggest far more involvement than here. See id. at *1. Thus, both the "de facto director" and "strategic alliance" arguments are unpersuasive given the facts of this case.

_____

an insider of that debtor as well.

Finally, Trustee contends that the bankruptcy court did not create a new per se category of insider through its decision. Aplt. Br. at 29-30. The BAP interpreted the bankruptcy court's decision as dictating that a creditor corporation with an executive officer on the board of a debtor is a non-statutory insider of that debtor. App. at 274. Trustee contends that the numerous factual findings of the bankruptcy court indicate that its decision was based upon the unique facts of Creditor's relationship with Debtor and allows similar cases to be decided on their facts as well. Aplt. Br. at 29-30.

Other than reciting the bankruptcy court's statement that "the statutory or per say [sic] categories of insiders should not be expanded by judicial interpretation" and listing the various factual findings of the bankruptcy court pertaining to the relationship between Creditor and Debtor, however (none of which seem remarkable considering the typical relationship between a corporation and its directors), Trustee does not address the BAP's fears that a closeness-alone test would create a "de facto director," per se rule. Id. Such a rule would force corporations to find directors from companies with which they do no business and would impermissibly create a new category of insider not determined within the context of "particular cases, based on the specific facts." Kunz, 489 F.3d at 1079; see Aplee. Br. at 25. This approach does not comport with the intent of Congress nor the case law, and therefore the judgment of the BAP is

AFFIRMED.