**In re ADAM AIRCRAFT INDUSTRIES, INC., Debtor.**

Jeffrey A. Weinman, Chapter 7 Trustee, Plaintiff–Appellant,

v.

Joseph K. Walker, Defendant–Appellee.

BAP No. CO–13–049.
Bankruptcy No. 08–11751.
Adversary No. 10–01098.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Filed May 15, 2014.

344

Theodore J. Hartl of Lindquist & Vennum L.L.P., Denver, CO, for Plaintiff–Appellant.

Todd L. Vriesman of Montgomery, Kolodny, Amatuzio & Dusbabek, L.L.P., Denver, CO, for Defendant–Appellee.

Before KARLIN, JACOBVITZ, and HALL [1], Bankruptcy Judges.

## OPINION

JACOBVITZ, Bankruptcy Judge.

The Chapter 7 trustee ("Trustee") for debtor Adam Aircraft Industries ("AAI") appeals a bankruptcy court order denying a portion of his preference and fraudulent conveyance claims against the defendant, Joseph Walker ("Walker"). We affirm.

## I. BACKGROUND

AAI designed and manufactured carbon composite aircraft before filing a voluntary Chapter 7 bankruptcy petition on February 15, 2008 ("Petition Date"). Walker was AAI's president and a member of AAI's board of directors (the "Board")

1. Honorable Sarah A. Hall, U.S. Bankruptcy Judge, United States Bankruptcy Court for the Western District of Oklahoma, sitting by designation.

from approximately 2003 or 2004 until early February 2007. Walker and AAI did not have a written employment agreement.

At all relevant times George Adam, Jr. ("Adam")—who founded AAI—was AAI's chief executive officer and chairman of the Board. On February 1, 2007, two "outside" members of AAI's Board, Sanjeev Mehra ("Mehra") and Michael Bierman,[2] informed Adam that the Board had decided to terminate Walker's employment as President and replace him with Duncan Koerbel ("Koerbel"). That evening Adam met with Walker and informed him of the Board's decision. The decision came as a complete surprise to both Walker and Adam. At the time, AAI was negotiating with Morgan Stanley, an investment banking firm, for substantial debt financing. Because that funding was critical to AAI, it was important that Walker's termination not disrupt the negotiation process. The Board therefore gave Walker the opportunity to "resign." Adam and Walker discussed this option during their meeting.

After the meeting, Walker went to his office at AAI to retrieve his personal belongings. While there, just minutes after midnight, Walker sent an e-mail to Adam resigning as President and from the Board and proposing severance terms. In his e-mail Walker proposed the following severance terms: (1) severance pay of $250,000 annually for two years; (2) health insurance for the same period; (3) refund of a $100,000 deposit Walker made for the future purchase of an AAI aircraft; and (4) repurchase of Walker's Series F preferred AAI stock shares for $100,000. In exchange, Walker offered to be a "strong supporter" of AAI, to be available as a consultant for two years, not to work for any competitor, and to tell all parties that he resigned to devote his time to a personal situation. Walker left AAI after sending the e-mail, never to return.

The next morning, Friday, February 2, Koerbel took over as AAI's new President, and AAI held an "all hands" meeting to announce Walker's resignation, Koerbel's election as the new President, and John Wolf's ("Wolf") appointment to the Board. The same morning Walker met briefly with Mehra in the lobby of an area hotel, a meeting Walker described as a "high-level, professional exit interview."[3] On the following Monday (February 5), the Board held a telephonic meeting during which Walker's resignation was accepted, effective February 2, 2007. Walker did not attend or participate in the meeting. The Board then appointed Wolf as a new Board member (no effective date specified) and elected Koerbel as the new President, effective February 2.

On February 13, 2007, Walker and AAI executed a Memorandum of Understanding ("MOU") outlining the financial terms of Walker's severance.[4] The same day, they also executed a Separation Agreement and Release ("February Agreement"), under which AAI agreed to pay Walker severance in accordance with the MOU. The February Agreement provided that Walker's "employment with [AAI] ter-

---

**2.** Mehra and Bierman were board members designated by Goldman Sachs and The Hunt Group, major investors in AAI.

**3.** Feb. 12, 2013 Trial Trans. at 237, *in* Appellant's Appendix at 508.

**4.** The severance terms in the MOU were: (1) severance pay of $250,000 for one year, in equal monthly installments beginning March 1, 2007; (2) additional monthly payments of $20,833 for up to six months if AAI's order book remained at a specified level; and (3) retention of vested stock options, as administratively feasible. AAI also agreed to offer, at some future time, the requested deposit returns, stock repurchase, and healthcare benefits.

minated effective March 1, 2007." The MOU and the February Agreement were prepared, at least in part, by Koerbel. Together they will be referred to as the "Severance Agreements."

On March 19, Walker e-mailed Kim Madigan ("Madigan"), AAI's vice president of human resources, requesting a status update on his plane deposit and stock purchase refunds. The next day, AAI issued a check refunding Walker's plane deposit, with interest. The credit agreement being negotiated between AAI and Morgan Stanley prohibited AAI from repurchasing its stock. The agreement was revised to exclude the repurchase of Walker's stock from this negative covenant to avoid problems with the Morgan Stanley funding. The Morgan Stanley deal closed in May 2007, infusing AAI with approximately $80 million.

Around the same time, Walker and AAI executed another Separation Agreement (the "May Agreement"). The May Agreement was substantially similar to the Severance Agreements. It changed the term "Separation Date" to "Change of Position Date." The May Agreement also provided that Walker's "employment as President terminated effective March 1, 2007" and that, as of that date, his position became "field sales liaison." Walker never performed any services as a "field sales liaison," and the parties did not intend for him to do so. Just what the stated separation date was intended to accomplish is not clear, as Walker had resigned as president and director of AAI in the early hours of February 2, and the Board of Directors formally accepted that resignation on February 5, "effective" February 2. Neither party offered an explanation for the changes appearing in the May Agreement. Several months later, Madigan e-mailed AAI's chief financial officer to request that Walker's stock purchase refund be expedited. Thirty days later, AAI issued a check to Walker for the repurchase of his stock at its issuing price.

In the one year period before the Petition Date, AAI made the following payments to Walker: 1) $105,704.11 in March, as a refund of his plane deposit; 2) $100,002 in July to repurchase his AAI stock; and 3) $250,000.08 in severance salary payments. Walker received $62,500.02 of the total severance payment amount within the 90–day period immediately prior to the Petition Date.

Trustee brought an adversary proceeding against Walker, seeking to recover all of the payments AAI made to him after his termination pursuant to 11 U.S.C. §§ 547(b)(4) and 548(a)(1)(B).[5] The bankruptcy court conducted a trial on the merits of Trustee's complaint, and ultimately granted judgment allowing Trustee to avoid the $62,500.02 paid to Walker within 90 days before the Petition Date pursuant to § 547(b)(4)(A).[6] The bankruptcy court denied Trustee's remaining claims under § 547 and § 548. Trustee timely appealed the bankruptcy court's decision. Walker did not appeal.

## II. APPELLATE JURISDICTION

■ This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts

---

5. Specifically, Trustee argued that the transfers were avoidable under § 548(a)(1)(B)(i) (no reasonably equivalent value) and either (B)(ii)(I) (debtor was insolvent) or (B)(ii)(IV) (transfer to an insider).

6. Unless otherwise noted, all statutory references in this decision will be to the Bankruptcy Code, codified in Title 11 of the United States Code.

within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[7] A judgment that resolves a bankruptcy adversary proceeding is final for purposes of appeal.[8] Since neither party elected to have the appeal heard by the United States District Court for the District of Colorado, they have consented to appellate review by this Court.

## III. ISSUES AND STANDARDS OF REVIEW

1. Did the bankruptcy court properly deny Trustee's § 547(b)(4)(B) preference claim to avoid payments made within the entire year prior to the Petition Date based on its finding that Walker was not an "insider"?

2. Did the bankruptcy court properly deny Trustee's § 548(a)(1)(B)(i) and (ii)(IV) fraudulent transfer claim on the same basis?

3. Did the bankruptcy court properly deny Trustee's § 548(a)(1)(B)(i) and (ii)(I) fraudulent transfer claim?

 A bankruptcy court's determinations of insider status and reasonably equivalent value are findings of fact that are reviewed on appeal under a "clearly erroneous" standard.[9] A finding is clearly erroneous if "it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." [10]

## IV. DISCUSSION

### A. *Section 547(b)(4)(B):* *Preferential Transfers to Insiders*

 Trustee contends that the bankruptcy court erred by finding that, for purposes of § 547(b)(4)(B), Walker was not an "insider" of AAI after February 1, 2007. Section 547(b) allows the bankruptcy trustee to avoid certain transfers made by the debtor before commencement of the bankruptcy case. In pertinent part, § 547(b) provides:

(b) [T]he trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

---

7. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–3.

8. *Strong v. W. United Life Assurance Co. (In re Tri–Valley Distrib., Inc.),* 533 F.3d 1209, 1214 (10th Cir.2008).

9. *See Anstine v. Carl Zeiss Meditec AG (In re U.S. Med., Inc.),* 531 F.3d 1272, 1275 (10th Cir.2008).

10. *Las Vegas Ice & Cold Storage Co. v. Far W. Bank,* 893 F.2d 1182, 1185 (10th Cir.1990) (internal quotation marks omitted).

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

A transfer must meet all of the stated elements in order to be avoided as a preferential transfer under § 547(b). Generally, the reach-back period for avoiding preferential transfers is 90 days before the petition date. When the creditor is an "insider" of the debtor, however, the 90–day reach-back period is extended to one year before the petition date.

1. *Statutory or Per Se Insider Status.*

 For purposes of § 547(b)(4)(B), there are two types of insiders: (1) statutory or "per se" insiders;[11] and (2) non-statutory insiders. A statutory or per se insider is an individual or entity specifically identified in 11 U.S.C. § 101(31).[12] For debtor corporations, per se insiders are: (i) directors; (ii) officers; (iii) persons in control of the debtor; (iv) partnerships in which the debtor is a general partner; (v) general partners of the debtor; and (vi) relatives of any of the foregoing.[13] A director "means a person who is a member of the governing board of the corporation and participates in corporate governance."[14] An officer is generally defined as "a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary, or treasurer."[15] Per se insider status "gives rise to a conclusive presumption that the individual or entity commands preferential treatment by the debtor."[16]

 Prior to his resignation as AAI's President and from the Board, Walker was a statutory insider. The bankruptcy court found that Walker ceased to be a statutory insider after February 1, 2007. Trustee argues that Walker was still an officer and director after February 2, 2007 because his "resignation" from both positions was conditioned on AAI's acceptance of the severance terms set out in the e-mail he sent at 12:04 a.m. on February 2, 2007. The language of the e-mail gives some support to Trustee's position, as Walker states that "I serve at the pleasure of the Board and will abide by their wishes [to resign] under the following non compete agreement: ...."[17] The bankruptcy court disagreed, however, finding that Walker made a "clean break" with AAI on February 1, 2007. There is substantial support in the record for the bankruptcy court's finding on this issue. Walker's resignation e-mail states that if his terms are met, he will abstain from competing, support the company to others, and attribute his departure to a personal situation. It then states that he had already removed all of his personal effects from the premises. Approximately eight or nine hours after Walker sent the e-mail, Koerbel succeeded him as President, and an "all-hands" meeting took place to introduce Koerbel and the replacement Board

---

11. Courts use the terms "statutory insider" and "per se insider" interchangeably. *Compare Rupp v. United Sec. Bank (In re Kunz)*, 489 F.3d 1072, 1078 (10th Cir.2007) (generally using the term "per se insider"), *with In re U.S. Med.*, 531 F.3d 1272 (generally using the term "statutory insider"). We likewise use these terms to refer to the same thing.

12. *In re U.S. Med.*, 531 F.3d at 1276 (differentiating between statutory and non-statutory insiders); *In re Kunz*, 489 F.3d at 1078.

13. 11 U.S.C. § 101(31).

14. *Black's Law Dictionary* 1113 (9th ed. 2009).

15. *Id.*

16. *In re U.S. Med.*, 531 F.3d at 1276 *(quoting In re Kunz*, 489 F.3d at 1079 (emphasis omitted)).

17. Email from Walker to Adam dated Feb. 2, 2007, *in* Appellant's Appendix at 48.

member to the AAI employees. The new President helped prepare the Severance Agreements, including the MOU. Further, Walker did not attend any Board meetings or otherwise participate in corporate governance or management after February 1, nor did he ever return to AAI's premises.

Based on the foregoing, the bankruptcy court did not commit clear error by finding that Walker made a clean break with AAI on February 1, and was not an officer or director and consequently was not a statutory insider after that date.

### 2. Non–Statutory Insider Status.

Because the statutory insider categories are non-exclusive,[18] courts have also developed the concept of the "non-statutory insider." As the Tenth Circuit has explained, non-statutory insider status is "based on a professional or business relationship with the debtor ... where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of dealings between the parties."[19] In ascertaining non-statutory insider status, courts have focused on two factors: "[1] the closeness of the relationship between the parties; and [2] whether any transactions between them were conducted at arm's length."[20] Indications of the parties' "closeness" include the transferee's access to inside information about the debtor or the transferee's ability to control the debtor.[21] A court's determination of the parties' close-

ness and the nature of their dealing is a highly fact-intensive endeavor.[22]

The record indicates that, after the night of February 1, Walker ceased to be a non-statutory insider. Following his unceremonious ouster by the Board, Walker was never "close" to AAI's management. He did not return to AAI's facility and had no access to company information. Trustee points out that Walker was able to receive the agreed-upon refund of his airplane deposit within days of e-mailing Madigan with such request. This fact alone does not evidence any particular closeness between AAI and Walker. AAI had already agreed to make the payment when Walker sent the e-mail; the fact that Madigan facilitated the payment promptly is not sufficient to establish insider status.

Trustee also argues that Walker's ability to negotiate an attractive and unusual severance package without any pre-existing obligation on the part of AAI evidences insider status. More specifically, Trustee contends the Severance Agreements could not have been negotiated at arm's length because Walker: (1) had the power to "wreak havoc" on AAI's relationship with its customers; (2) had intimate knowledge of AAI's financial situation and operations; and (3) received better severance benefits than any other AAI executive.

Such facts, even if true, do not show that the bankruptcy court erred in finding that Walker was not a non-statutory insid-

---

**18.** 11 U.S.C. § 102(3) (in Title 11, the terms "includes" and "including" are not limiting).

**19.** In re Kunz, 489 F.3d at 1079 (quoting Miller Ave. Prof'l & Promotional Serv. v. Brady (In re Enter. Acquisition Partners), 319 B.R. 626, 631 (9th Cir. BAP 2004)).

**20.** In re U.S. Med., 531 F.3d at 1277 (quoting In re Krehl, 86 F.3d 737, 742 (7th Cir.1996)).

**21.** Id.

**22.** Cimino v. The Writer Corp. (In re Polk), 125 B.R. 293, 296 (Bankr.D.Colo.1991) ("who or what qualifies as an insider is a question of fact"); Rupp v. United Sec. Bank (In re Kunz), 335 B.R. 170, 175 (10th Cir. BAP 2005), aff'd in part, 489 F.3d 1072 (10th Cir.2007) (whether there was sufficient control to impose insider status is ordinarily a question of fact).

er after February 1. Walker negotiated the Severance Agreements with the Board that had just fired him, and the agreements were partially drafted by his replacement, Koerbel. These awkward and perhaps uncomfortable circumstances show that both parties were likely motivated by their own interests in reaching the final deal. AAI desired a clean transition that would not jeopardize the Morgan Stanley negotiations or customer or employee relationships, as well as an enforceable promise that Walker would not compete with AAI for a period of time. Walker, who had no opportunity to prepare for the termination and had a wife undergoing a serious medical treatment, needed a continued means of support and continued medical coverage. Further, Walker received less than he initially asked for, demonstrating both the arm's-length nature of the negotiations and that Walker's resignation was not conditioned on the severance terms he proposed.

In light of the evidence in the record, it was not clear error for the bankruptcy court to find that Walker ceased to be a non-statutory insider after February 1, 2007. Because all of the transfers were arranged and made after that date, we need not reach the issue raised by Trustee of whether an entity must be an insider at the time the payments were made or at the time they were arranged.[23]

### B. *Section 548(a)(1)(B)(ii)(IV): Insider Transfers & Obligations Under an Employment Contract*

Trustee contends that the bankruptcy court erred in analyzing his claims under 11 U.S.C. § 548(a)(1)(B)(i) and (ii)(IV). Those subsections provide:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property ... that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . .
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.[24]

If Trustee has met the requirements of § 548(a)(1)(B)(i) and (B)(ii)(IV), he is not required to prove the debtor's insolvency.[25]

▮▮▮▮ The meaning of "insider" is the same for purposes of §§ 547 and 548. The main difference in the analysis under those sections is that § 547 focuses on insider status at the time of the transfer, whereas

---

**23.** *Compare EECO Inc. v. Smedes (In re EECO Inc.)*, 138 B.R. 260, 264 (Bankr.C.D.Cal.1992) ("at the time of such transfer" includes the time when the transfer was arranged, since otherwise, insiders could thwart § 547's goal of recovering assets from insiders by working out a deal for themselves and then resigning), *with Jahn v. Gildea (In re Incentium, LLC)*, 2012 WL 1660657 at *9 (Bankr.E.D.Tenn. May 10, 2012) (holding that insider status must be analyzed at the time transfer is made, not when it was arranged).

**24.** 11 U.S.C. § 548.

**25.** *Jahn v. Char (In re Incentium, LLC)*, 473 B.R. 264, 268 (Bankr.E.D.Tenn.2012) (citing the statute); *Moore v. Turner (In re Barber)*, No. 10–6002, 2010 WL 8569048, at *2 (Bankr.S.D.Ga. Oct. 20, 2010) (noting that § 548(a)(1)(B)(ii) is written in the disjunctive, meaning that either "[d]ebtor was insolvent at the time of the transfer, or that the transfer was to an insider under an employment contract and out of the ordinary course of business").

§ 548 focuses on insider status both at the time of the transfer and when the obligation was incurred.[26]

■ As discussed above, Walker ceased to be an insider on February 1, or at the latest at 12:04 a.m. on February 2. The Severance Agreements and the May Agreement were negotiated and executed after that date, and the payments made under those agreements commenced thereafter. Walker was therefore not an insider either when AAI incurred its obligations under the Severance Agreements and May Agreement, or when AAI made the payments to him.

Because a claim predicated on § 548(a)(1)(B)(ii)(IV) fails unless the transferee is an insider, we need not reach whether the Severance Agreements or May Agreement are employment contracts or were executed in the ordinary course of business. The bankruptcy court properly denied Trustee's claim under § 548(a)(1)(B)(i) and (ii)(IV).

### C. Section 548(a)(1)(B): Obligations Under the Severance Agreements

■ Trustee asserts that, even if Walker was not an insider, Trustee should have prevailed on his alternative constructive fraud claim under 11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I). Those subsections require Trustee to show that AAI: (1) transferred property or incurred an obligation within two years before the Petition Date; (2) received less than reasonably equivalent value for the transfer or obligation; and (3) was insolvent when the transfer was made or the obligation was incurred, or became insolvent as a result thereof, or that one of the other applicable requirements set forth in § 548(a)(1)(B)(ii)(II) and (III) is satisfied. Trustee bears the burden of proving each element of the claim.[27]

Trustee argues on appeal that AAI did not receive reasonably equivalent value in exchange for its obligations to Walker and that AAI was insolvent when the obligations were incurred. The bankruptcy court did not consider whether AAI's obligations to Walker under the Severance Agreements were avoidable. Instead, it focused on the payments AAI made pursuant to those obligations. Nevertheless, we may examine the record to determine whether Trustee carried his burden of proving a prima facie case on his claims under § 548(a)(1)(B)(i) and (ii)(I).[28]

■ The Bankruptcy Code defines "insolvent" as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation[.][29] For purposes of 11 U.S.C. § 548(a)(1)(B)(ii)(I), insolvency is determined using a "balance sheet test," mean-

---

**26.** *Compare* 11 U.S.C. § 547(b) ("[T]he trustee may avoid any transfer ... made between ninety days and one year before the date of the filing of the petition, if such creditor *at the time of such transfer* was an insider....") (emphasis added), *with* 11 U.S.C. § 548(a)(1)(B)(ii)(IV) (allowing the trustee to avoid transfers and obligations if the debtor "made such transfer[s] to ... an insider, or *incurred such obligation* to or for the benefit of an insider....") (emphasis added).

**27.** *Kaler v. Craig (In re Craig)*, 144 F.3d 587, 590 (8th Cir.1998); *In re Solomon*, 299 B.R. 626, 638 (10th Cir. BAP 2003) (affirming the bankruptcy court's conclusion that the trustee satisfied his burden of proof under § 548(a)(1)(B)).

**28.** *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1130 (10th Cir.2011) (noting that an appellate court "may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the [bankruptcy] court").

**29.** 11 U.S.C. § 101(32).

ing the debtor's liabilities exceed its assets at fair valuation.[30]

■ Here, AAI incurred the obligations under the Severance Agreements on or about February 13, 2007.[31] The parties began negotiating on or about February 5 and executed the agreements on February 13. Certain terms of the Severance Agreements became effective on March 1.

In analyzing insolvency for purposes of § 547(b), the bankruptcy court found that:

> According to AAI's consolidated balance sheet for the months of January, February, and March 2007, AAI's assets exceeded its liabilities, and stockholder equity was positive.[32]

The balance sheets reflect that for the first quarter of 2007, AAI's assets exceeded its liabilities by approximately $12,500,000 in January 2007; $7,500,000 in February 2007; and $3,200,000 in March 2007.

■ On appeal, Trustee argues that the balance sheets are not an accurate assessment of AAI's solvency. According to Trustee, AAI was "burning cash" since its inception and depended on frequent infusions of debt or equity to survive. This argument confuses solvency with cash flow. For purposes of § 548(a)(1)(b)(ii)(I), "[i]nsolvency is determined from the creditor's perspective by examining what assets are available and the value that could be realized for payment of debts." [33] Cash flow, which reflects a change in cash position over time, is irrelevant to whether a debtor is "insolvent" as that term is used in § 548(a)(1)(b)(ii)(I). A startup corporation without revenue, surviving on equity infusions, could be burning cash even if the value of its assets exceeded its liabilities.

Trial testimony showed AAI, like many start-ups, had no income and substantial expenses and relied on periodic rounds of equity or debt financing for operating capital. This was true in the first quarter of 2007; AAI clearly was not generating revenue in excess of expenses when it executed the Severance Agreements. That does not demonstrate insolvency, however. The balance sheets show that in the first quarter of 2007, AAI had enough assets to pay its creditors.[34]

---

30. *In re Solomon,* 299 B.R. at 638 (noting that the Bankruptcy Code applies the "balance sheet" test for determining insolvency, *i.e.* whether liabilities exceed assets at fair valuation); *Sherman v. Rose (In re Sherman),* No. 00–8052, 2001 WL 997946, at *2 (10th Cir. Aug. 31, 2001) (affirming bankruptcy court's decision to take judicial notice of balance sheet from the debtor's case in assessing insolvency for purposes of § 548(a)(1)(B)).

31. Although a second severance agreement was executed in May 2007, that document did not change any of AAI's existing obligations to Walker. Further, Trustee argues in his opening brief that AAI's financial condition after May 2007 was irrelevant because the "new obligations to Walker were incurred months before." *See* Appellant's Opening Brief at 35.

32. *In re Adam Aircraft Indus., Inc.,* 493 B.R. 834, 847 (Bankr.D.Colo.2013). This finding seemingly conflicts with the bankruptcy court's finding that "[a]lthough Adam testified

he believed the company to be solvent during at least a portion of 2007, the Trustee's evidence rebuts that testimony." *Id.* Based on a review of the source documents, including the balance sheet, and the context in which the findings were made, it appears that the bankruptcy court meant that Trustee demonstrated AAI was insolvent during the latter portion of 2007 *(i.e.* during the 90–day preference period), not that AAI was insolvent during the entire year.

33. *Solomon,* 299 B.R. at 639 n. 54 (quoting *Bay State Milling Company v. Martin (In re Martin),* 145 B.R. 933, 947 (Bankr.N.D.Ill. 1992), *appeal dismissed,* 151 B.R. 154 (N.D.Ill.1993)).

34. At most, the cash burn could be evidence that AAI operated with unreasonably small capital (§ 548(a)(1)(B)(ii)(II)) and/or had difficulty paying debts as they became due (§ 548(a)(1)(B)(ii)(III)). Trustee's statement of

Trustee also argues that the book values listed on the balance sheets do not represent "fair valuation" of AAI's assets. He points out that, after the bankruptcy filing, AAI's business sold for only $10 million at auction. The argument is unavailing. In an action to avoid an obligation, the relevant inquiry under § 548(a)(1)(B)(ii)(I) is the value of assets when the obligation was incurred, and not later after the debtor commenced a bankruptcy case.[35] Further, Trustee presented no evidence that the book values listed on the balance sheets jointly proffered by Trustee and Walker as a stipulated exhibit were inaccurate. Instead, his trial evidence and argument focused almost exclusively on Walker's alleged insider status, which did not require a showing of insolvency. It is too late for Trustee to present evidence in support of his position that AAI was insolvent on a balance sheet basis in February 2007. The only evidence in the record shows balance sheet solvency at the time the obligations were incurred.

After carefully reviewing the record and the bankruptcy court's findings regarding AAI's financial condition in February and March 2007, we conclude that the uncontroverted evidence shows AAI was solvent when it incurred the relevant obligations to Walker. To the extent the bankruptcy court erred by failing to analyze whether AAI's obligations under the Severance Agreements were avoidable, the error was therefore harmless. Because Trustee failed to present any evidence to support

an essential element of his prima facie case under § 548(a)(1)(B)(ii)(I), we need not reach the issue of reasonably equivalent value under § 548(a)(1)(B)(i).

### D. Section 548(a)(1)(B): Payments Under the Severance Agreements

Trustee also sought to avoid as fraudulent transfers all payments AAI made to Walker under the Severance Agreements, including the airplane deposit refund, all severance payments, and the amounts paid to Walker to repurchase his AAI stock. As with the obligations, Trustee was required to prove that AAI received less than reasonably equivalent value in exchange for the transfers and was insolvent when each transfer was made.[36]

What constitutes reasonably equivalent value is largely a question of fact, determined as of the date of the transfer or obligation.[37] Value is defined under § 548(d)(2)(A) as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." "Debt" is defined as "liability on a claim," and "claim" is broadly defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured," and includes the "right to an equitable remedy for breach of performance." [38]

---

issues on appeal only contests the bankruptcy court's findings with regard to solvency under § 548(a)(1)(B)(ii)(I). Trustee did not preserve for appeal any challenge whether he proved alternative grounds under § 548(a)(1)(B)(ii)(II) or (III). Therefore, we need not consider those sections for purposes of this appeal.

**35.** 11 U.S.C. § 548(a)(1)(B)(ii)(IV) (an obligation is avoidable if, among other things, the

debtor was "insolvent on the date that such . . . obligation was incurred[.]").

**36.** 11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I).

**37.** *Clark v. Sec. Pac. Bus. Credit, Inc.*, 996 F.2d 237, 242 (10th Cir.1993).

**38.** 11 U.S.C. § 101(5) and (12).

■ The bankruptcy court rejected Trustee's claim to recover transfers to Walker under § 548(a)(1)(B), explaining that because the Severance Agreements gave rise to a claim by Walker against AAI, each transfer to Walker reduced such claim, thereby providing reasonably equivalent value to AAI.

Trustee contends that the bankruptcy court's analysis of this issue was flawed because Walker's claims were predicated on obligations which themselves were avoidable. We agree that, if AAI's obligations under the Severance Agreements were avoidable, the satisfaction of such obligations cannot provide reasonably equivalent value. If the obligations are not avoidable, however, then the transfers were for reasonably equivalent value for purposes of § 548(a)(1)(B)(i) because they reduced Walker's claim under the Severance Agreements.[39]

As we explained above, the obligations themselves are not avoidable. Each payment to Walker therefore reduced the amount of AAI's obligation under the Severance Agreements in an amount equal to the payment. Consequently, the bankruptcy court's finding that AAI received reasonably equivalent value in exchange for the transfers to Walker is not clearly erroneous. Since Trustee cannot meet that requirement of § 548(a)(1)(B)(i), we need not examine whether AAI was insolvent on the date of each transfer.

### E. *Walker's POC*[40]

Finally, Trustee contends that the bankruptcy court was required to disallow Walker's claim under § 502(d) instead of conditioning allowance upon payment of the amount of the avoided preferential transfer. Walker made a claim against AAI's bankruptcy estate in the amount of nearly $146,000, which Trustee asserts should have been disallowed in its entirety pursuant to § 502(d). That section provides, in pertinent part:

> the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under section . . . 547 . . . unless such entity or transferee has paid the amount . . . for which such entity or transferee is liable under section . . . 550 of this title.

In reliance on this provision, the bankruptcy court's order states that "[u]nless Walker pays [the $62,500.02 preference amount] to the Trustee for the benefit of the estate within thirty days of this Order, Walker's claim must be disallowed, such that he will be unable to share in any distribution of assets of the estate."[41]

Although § 502(d) is mandatory, it does not specify a payment deadline. Trustee appears to argue that payment must be contemporaneous with entry of a judgment. Such an interpretation of the statute is not supported by the statutory language or case law. Nearly every decision that has considered the effect of § 502(d) has determined that:

> The creditor is still entitled to a reasonable time after the final determination until Section 502(d) is kicked into effect. Thus, a court may not order a turnover in one instant and in the same instant

---

**39.** *Jobin v. McKay (In re M & L Bus. Mach. Co., Inc.),* 84 F.3d 1330, 1340–41 (10th Cir. 1996) (A debtor receives reasonably equivalent value for payments to a creditor when that creditor's claim is reduced accordingly).

**40.** On August 31, 2012, Walker filed a proof of claim (POC) in AAI's bankruptcy, asserting AAI owed him a total of $145,831 "plus unliquidated defense, indemnification and reimbursement."

**41.** Order dated June 21, 2013 at 22, *in* Appellant's Appendix at 652.

disallow a creditor's claim for failing to comply with that order. Courts applying Section 502(d) have done so by affording the creditor a reasonable period of time before dismissing claims.[42]

We agree that § 502(d) allows the transferee to repay the amount of the avoided preferential transfer within a reasonable time after final determination of liability. Here, the bankruptcy court ordered Walker to repay that amount, $62,500, to Trustee with 30 days in order to maintain his claim against the estate. Such deadline was appropriate under the circumstances of this case. The bankruptcy court's ruling therefore was consistent with § 502(d).

## V. CONCLUSION

The bankruptcy court's denial of Trustee's claims under §§ 547(b)(4)(B) and 548(a)(1)(B) is affirmed; its findings regarding insider status and reasonably equivalent value are not clearly erroneous. To the extent the bankruptcy court erred by failing to separately address whether obligations under the Severance Agreements were avoidable, such error is harmless because Trustee failed to prove insolvency at the time AAI incurred the obligations. Finally, the bankruptcy court's order allowing Walker 30 days to pay the amount of the avoided preferential transfer is affirmed.

**42.** *In re Davis,* 889 F.2d 658, 662 (5th Cir. 1989).