**In re CONCORD SQUARE APARTMENTS OF WOOD COUNTY, LTD., Debtor.**

**CONCORD SQUARE APARTMENTS OF WOOD COUNTY, LTD., Plaintiff,**

v.

**OTTAWA PROPERTIES, INC., Defendant.**

**Bankruptcy No. 94–50325. Adv. No. 2–94–0134.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Sept. 21, 1994.

Robert J. Sidman, Patricia M. Scanlon, Vorys, Sater, Seymour & Pease, Columbus, OH, for Ottawa Properties, Inc.

Kenneth R. Cookson, J. Roger Davis, Carlile Patchen & Murphy, Columbus, OH, for debtor Concord Square Apartments of Wood County, Ltd.

Carol G. Stebbins, Cardinal Realty Services, Inc., Reynoldsburg, OH, for Cardinal Realty Services, Inc.

*OPINION AND ORDER ON RELIEF FROM THE AUTOMATIC STAY AND COMPLAINT FOR DECLARATORY RELIEF*

BARBARA J. SELLERS, Bankruptcy Judge.

Before the Court are several matters which involve essentially similar legal issues. Ottawa Properties, Inc. ("Ottawa") filed a motion for relief from stay in the chapter 11 case of Concord Square Apartments of Wood County, Ltd. ("Debtor"). The Debtor opposes that motion. The Debtor also has initi-ated an adversary proceeding against Ottawa for certain declaratory relief. The Court heard these related matters on August 25, 1994. The Court resolved certain issues at the conclusion of the hearing and permitted posthearing briefs by the parties on remaining issues.

The Court has jurisdiction in these matters under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. These matters are core proceedings under 28 U.S.C. § 157(b)(2) which this bankruptcy judge may hear and determine.

**I. Factual Background and Positions of the Parties.**

The Debtor is a limited partnership which owns and operates an apartment complex. Ottawa is the holder of a multifamily note ("Note") executed by the Debtor. To secure that indebtedness, the Debtor also executed an Open–End Mortgage, Assignment of Rents and Security Agreement ("Mortgage"); a General Assignment of Leases, Rents and Profits; and certain financing statements. Ottawa also now holds these various security documents. The Debtor filed its voluntary petition for relief on January 24, 1994.

Ottawa filed its motion for relief from stay and alleged cause under 11 U.S.C. § 362(d). Ottawa asserts that the Debtor will be unable to propose a confirmable chapter 11 plan of reorganization because Ottawa has purchased certain unsecured claims for full value. Ottawa contends it will vote its secured claim and the unsecured claims it now holds to reject any plan proposed by this Debtor. As such, Ottawa concludes that the Debtor will not be able to meet the confirmation requirement of 11 U.S.C. § 1129(a)(10) that at least one class of impaired claims accept the plan "without including any acceptance of the plan by an insider." Therefore, because the Debtor cannot propose a confirmable plan of reorganization without Ottawa's support, Ottawa concludes that sufficient cause exists to lift the automatic stay.

Immediately prior to the filing of Ottawa's motion for relief from stay, the Debtor initiated an adversary proceeding seeking a declaration that the unsecured claims assigned to Ottawa were purchased in bad faith and,

therefore, cannot be voted in connection with any proposed plan of reorganization. That action further seeks to have the claim transfers invalidated.

If the claim transfers are permitted to stand, the Debtor argues that Ottawa is entitled to only one vote for all claims it holds. Ottawa contends that it is entitled to vote separately each claim it now holds.

In defense of Ottawa's motion for relief from stay, the Debtor asserts that certain unsecured claims held by affiliates of the Debtor's general partner, Cardinal Realty Services, Inc., (the "Insider Claims"), may be sold to an entity that is not an "insider" of the Debtor. Thus, the Debtor concludes that it may have a class of noninsider impaired claims able to accept any plan of reorganization it proposes.

Finally, the Debtor argues that disbursements made by Ottawa to purchase unsecured claims are advances under the mortgage note, pursuant to paragraph 8 of the Open–End Mortgage—"Protection of Lender's Security," which therefore become part of Ottawa's claim under the Note.

## II. Conclusions of Law.

At the conclusion of the August 25, 1994 hearing on these matters, the Court found that: Ottawa did not purchase the unsecured claims in bad faith; such purchased claims may be voted; and the transfer of unsecured claims to Ottawa will not be invalidated. For the reasons stated by the Court on the record at that hearing, the Court maintains those rulings. The issues which remain to be decided by the Court are:

(1) Whether the claims purchased by Ottawa are attributable to advances under the mortgage which become part of Ottawa's claim under its Note and Mortgage;

(2) Whether Ottawa is entitled to vote separately each claim it purchased in any proposed plan of reorganization;

(3) Whether cause exists to lift the automatic stay because the Debtor is incapable as a matter of law of proposing a plan of reorganization which can be confirmed.

■ The Court finds that the amounts expended by Ottawa to purchase certain unsecured claims are not advances under paragraph 8 of the Mortgage. That provision permits Ottawa to "disburse such sums and take such actions as Lender deems necessary, in its sole discretion to protect Lender's interest." It further provides that such sums so disbursed "shall become additional indebtedness of Borrower secured by this Instrument."

The evidence presented by Ottawa established that amounts disbursed to purchase the unsecured claims were not charged against the Mortgage. Further, the Court finds that the purchase of these claims is not the type of expenditure contemplated under paragraph 8 of the Mortgage. Rather, Ottawa's purpose was to block confirmation of any plan proposed by the Debtor with which Ottawa did not agree. Accordingly, the monies Ottawa expended to purchase unsecured claims against the Debtor in this bankruptcy case do not become part of Ottawa's claim under the Note and Mortgage.

■ The next issue before the Court is the number of votes Ottawa may cast for or against any plan of reorganization. The Court finds that a purchaser of claims is entitled to a vote for each separate claim it holds. This conclusion is supported by 11 U.S.C. § 1126(c), which states: "A class of claims has accepted a plan if such plan has been accepted by creditors, .. ..., that hold at least two-thirds in amount and more than one half in number of the **allowed claims** of such class held by creditors, ..., that have accepted or rejected such plan. (emphasis added) The language distinguishes between claim-holders and claims. "The formula contained in § 1126(c) speaks in terms of the number of claims, not the number of creditors, that actually vote for or against the plan." *In re Gilbert*, 104 B.R. 206, 210 (Bankr.W.D.Mo.1989). Thus, a creditor such as Ottawa, which holds multiple claims, has a voting right for each claim it holds.

The final issue before the Court, given Ottawa's control of any general unsecured creditor class, is whether confirmation of a plan opposed by Ottawa is legally possible. In this connection, the Debtor's general part-

ner has proposed to sell the Insider Claims to another entity. If the purchaser is not an insider, the Debtor asserts that an impaired accepting class would be possible.

■ Statutory language includes general partners of a debtor as "insiders" if the debtor is a partnership. 11 U.S.C. § 101(31)(c). The initial claim-holders of the questioned claims against this Debtor are subsidiary corporations of the Debtor's general partner. Under the circumstances of the Cardinal enterprise bankruptcies, the Court believes these claim-holders also are "insiders" of the Debtor within the language of 11 U.S.C. § 101(31)(C). Because "insider" claim-holders lack the ability to cause the acceptance of an impaired class under 11 U.S.C. § 1129(a)(10), the Debtor's general partner has proposed to cause the transfer of these unsecured Insider Claims to a third party. At issue is whether the "insider" status would transfer to any third party purchaser of those claims.

■ This Court holds that the "insider" status of a claimant does not, as a matter of law, transfer with a claim upon the sale or assignment of that claim to a third party. Such status does not transfer as a matter of law for two reasons. First, in bankruptcy, a distinction is made between the status of a claim and the status of the claim-holder. That distinction precludes "insider" status from tainting the status of a claim. Second, the status of a third-party transferee as an "insider" is a question of fact to be determined after any transfer takes place. Generally, assignment law makes the transferee of a claim subject to any defects present in the claim transferred. There is a distinction, however, between the status of a claim-holder and the substance of a claim. The "insider" status, as defined in 11 U.S.C. § 101(31), refers to individuals, partnerships, corporations, municipalities, affiliates, and managing agents. The term describes the holder of a claim, not the claim. Therefore, only claim-holders can be determined to be "insiders." The language of 11 U.S.C. § 1129(a)(10) further supports this construction.

■ In *In re Hempstead Realty Associates*, 38 B.R. 287, 290 (Bankr.S.D.N.Y.1984),

the court suggested that the debtor's inability to gain acceptance of a plan could be cured by the assignment of a claim from an "insider" claim-holder to a noninsider entity. Such suggestion bolsters this Court's determination that "insider" status merely describes the entity holding a claim and is not intended to describe an attribute of the claim itself.

■ The determination whether a claim-holder is an "insider" is a question of fact. After transfer of a claim from an "insider" claim-holder to a third-party transferee, the status of the new holder may need to be determined under 11 U.S.C. § 101(31). Because the scope of 11 U.S.C. § 101(31) is not limited to the relationships listed in the statute, such are only illustrative examples of "insider" relationships. "In the legislative history, the term 'insider' is referred to as 'open-ended' because it is not susceptible of precise specification." *In re Acme–Dunham Inc.*, 50 B.R. 734, 739 (D.Me.1985). In conclusion, the fact that a transfer by assignment has been made from an "insider" claim-holder to a third party does not make the third party transferee an "insider" as a matter of law. The status of the claim-holder is not imputed to the transferee, but is a matter of fact to be determined from evidence of the relationship between the debtor and the third-party transferee under the statutory language and legislative policy set forth in 11 U.S.C. §§ 101(31) and 1129(a)(10).

■ Ottawa's motion for relief from stay is predicated solely upon the Debtor's inability to propose a plan that could meet the requirements of § 1129(a)(10). The Court finds, however, that the Debtor is not precluded as a matter of law from proposing a confirmable plan of reorganization. A factual determination may be required to determine whether any transferee of claims now held by insiders may have its votes counted for or against a proposed plan of reorganization. That factual issue is not ripe for decision at this time, however. Therefore, Ottawa's motion for relief from stay for cause is **DENIED.**

**IT IS SO ORDERED.**