**NOT FOR PUBLICATION**

**FILED**

JUL 16 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID ISRAEL GASTELUM CHAVEZ, Petitioner, v. WILLIAM P. BARR, Attorney General, Respondent. | No. 14-71612 Agency No. A078-461-188 MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 10, 2019
Pasadena, California

Before: WARDLAW, BYBEE, and OWENS, Circuit Judges.

The government appeals the district court's declaratory judgment that David Gastelum Chavez, who was born in Mexico, is a United States citizen through his maternal grandmother, Maria de Jesus Vargas Olivo. Gastelum was charged with illegal reentry under 8 U.S.C. § 1326. After Gastelum presented a defense of derivative citizenship, the jury acquitted him. On June 11, 2014, the Department of Homeland Security (DHS) arrested Gastelum and reinstated his removal order.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Gastelum petitioned for review of the reinstatement order, and we transferred the case to the district court for a de novo hearing on his claim to United States citizenship pursuant to 8 U.S.C. §1252(b)(5)(B).

1.      The district court correctly applied the legal standard for § 1252(b)(5)(B) citizenship determination transfer cases.  We explicitly held in *Mondaca-Vega v. Lynch*, 808 F.3d 413 (9th Cir. 2015) (en banc), that determination of citizenship in § 1252(b)(5)(B) cases involves a burden-shifting scheme in which "[t]he government bears the ultimate burden of establishing all facts supporting deportability by clear, unequivocal, and convincing evidence." *Id.* at 419 (internal quotation marks omitted).  "When, however, the government offers evidence of foreign birth, a rebuttable presumption of alienage arises, shifting the burden to the alleged citizen to prove citizenship.  Upon production by a petitioner of substantial credible evidence of the citizenship claim, this presumption bursts and the burden shifts back to the government to prove the respondent removable by clear and convincing evidence." *Id.* (internal quotation and alteration marks and citation omitted).

2.      The district court did not clearly err in finding that Gastelum's grandmother, Vargas, was born in the United States.  It was not "illogical, implausible, or without support in the record," *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010), to find that Gastelum had shown "'substantial credible evidence' of his

2

citizenship claim by the preponderance of the evidence." First, a baptismal record from June 1929 at Sacred Heart Church in El Paso states that Vargas was born in El Paso, Texas. The current administrative assistant at the church, Teresa Del Carmen Ortega, interpreted this record based on her training: When the registry says "de El Paso," that means that the individual was born in El Paso—and if the individual was born elsewhere, it would state "nacio" and then list the other city.

Second, the detailed testimony of four family members consistently placed Vargas's birthplace in the United States. Gastelum's mother, who is Vargas's daughter, remembers hearing a comment from her grandmother when President Kennedy died that "they killed the president of the United States in the place where your mom was born." Gastelum's sister testified that she learned that her grandmother Vargas was born in the United States when she was five or six years old: "My grandfather and my grandmother started getting into a fight. And my grandfather yelled to my grandmother in order to offend her, 'Chicana' . . . . And then she told me a Chicana means a person who is born in the United States." Caroline Lopez, Gastelum's wife, testified that Vargas told her over the phone that Vargas was born in El Paso because the family fled Mexico as a result of the Cristero War and stayed in El Paso until the war was over, when Vargas was three or four years old. Finally, Vargas's nephew, Humberto Vargas, testified that he

3

heard from multiple family members that Vargas was born in El Paso, including Vargas herself, his father, and his grandmother.

It also was not clearly erroneous for the district court to find that the government's evidence failed to "satisfy the government's burden to establish with clear and convincing evidence that Gastelum Chavez is not a United States citizen." The government's evidence is internally conflicting. This includes two official birth certificates issued by the Mexican government that each list Vargas's birthplace as a different city in Mexico. Although Gastelum provided an explanation for one of the birth certificates, neither party provided any testimony regarding the history or creation of the other birth certificate.

The district court weighed the evidence and judged credibility under the correct standard required by *Mondaca-Vega*. The dissent would reweigh the evidence, which we are not allowed to do on appeal. The clearly erroneous standard is a "highly deferential standard to findings of fact, because findings of fact are made on the basis of evidentiary hearings and usually involve credibility determinations. Therefore, so long as the [district] court's findings are plausible in light of the record viewed in its entirety, we cannot reverse even if we would have weighed the evidence differently." *In re The Vill. at Lakeridge, LLC*, 814 F.3d 993, 1002 (9th Cir. 2016) (internal quotation and alteration marks and citations omitted).

3.      We therefore affirm the district court's declaratory judgment and vacate Gastelum's final order of removal.  We need not address Gastelum's alternative argument that DHS abused its discretion in reinstating the order of removal after Gastelum was acquitted of his illegal reentry charge.

**DECLARATORY JUDGMENT AFFIRMED; PETITION GRANTED; FINAL ORDER OF REMOVAL VACATED.**

*Gastelum Chavez v. Barr*, No. 14-71612

BYBEE, Circuit Judge, dissenting:

I respectfully dissent. The district court found that Gastelum's grandmother, Maria de Jesus Vargas Olivo, was born in 1929 in the United States rather than in Mexico. A review of the evidence presented on that issue has "left [me] with the definite and firm conviction that a mistake has been committed." *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009) (en banc) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The government introduced seven government-issued documents all listing Vargas's country of birth as Mexico—five of the documents say she was born in Ciudad Juarez, Chihuahua, and two say she was born in Villa Juarez, San Luis Potosi. Gastelum responded with a 1929 baptismal record entry for Vargas from a church in El Paso, Texas, that says "de El Paso" under Vargas's name, testimony from the current custodian of church records about what "de El Paso" might have meant in 1929, and testimony from four of Gastelum's relatives who claimed to have heard that Vargas was born somewhere in the United States.

In relying on Gastelum's evidence and discounting the government's, the district court made a series of critical errors, two of which require reversal here. First, the court mischaracterized the testimony of the current church custodian. According to the court, the custodian testified that "a child whose baptism was

being recorded was born in El Paso, unless another location was identified." But the custodian actually testified that, when an entry did not specify a birthplace with the word "nacio," she simply "assumed"—with no foundation—that the child had been born in El Paso. Moreover, the practice of the current custodian is not evidence of what the custodian thought in 1929; it is not even hearsay. Indeed, the custodian did not know whether ninety years ago the church would even ask parents about the child's birthplace when recording a baptism in the registry. The baptismal registry is thus useless in this case.

Second, the district court rejected seven government-issued records of Vargas's birthplace by claiming that they "conflict with" one another. The records, however, do not conflict in any sense relevant here; they all state that Vargas was born in Mexico. For our purposes, the city in which she was born does not matter. In any event, Gastelum explained why two of the records—prepared in 1997 and 2015, decades after Vargas was born—list Villa Juarez, San Luis Potosi, as Vargas's birthplace: Vargas lied to the San Luis Potosi government in order to get a Mexican passport. Once these admittedly fraudulent documents are removed from the picture, we are left with five different documents, three dated in 1929, stating that Vargas was born on February 4, 1929, in Ciudad Juarez, Mexico. Four of these documents, including a birth registration and certificate dated March 5,

2

1929, are official documents from Mexico. The fifth document, also prepared in 1929, is a U.S.-issued border crossing card listing Vargas's place of birth as Ciudad Juarez. Thus, the overwhelming weight of the evidence shows that Vargas was born in 1929 in Mexico. Because the district court rejected these documents in favor of vague recollections from family members and speculation about a baptismal record that does not actually state Vargas's birthplace, I am convinced that the district court committed clear error in finding that Vargas was born in the United States.

I would reverse the judgment.